UNITED STATES DISTRICT COURT EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| LESLEY ANN SAKETKOO, MD, MPH, | ECF CASE |
| Plaintiff, | Civil Action No.: 2:19-cv-12578 |
| v. | Judge Lance M. Africk |
| TULANE UNIVERSITY SCHOOL OF MEDICINE, ADMINISTRATORS OF THE TULANE EDUCATIONAL FUND, LEE HAMM, MD, AND JOSEPH LASKY, MD, | Magistrate Judge Michael B. North |
| Defendants. | |

PLAINTIFF'S MEMORANDUM OF LAW OPPOSING DEFENDANT JOSEPH LASKY'S PARTIAL MOTION TO DISMISS AND MOTION TO STRIKE

Dated: New York, New York
February 4, 2020

Jessica M. Vasquez
THE VASQUEZ LAW OFFICE
400 Poydras Street, Suite 900
New Orleans, Louisiana 70130

Douglas B. Lipsky (*Via Pro Hac Vice*)
LIPSKY LOWE LLP
420 Lexington Avenue, Suite 1830
New York, New York 10170-1830
212.392.4772
*Plaintiff's Counsel*

Plaintiff Lesley Ann Saketkoo, MD, MPH ("Plaintiff") submits this memorandum of law opposing Defendant Joseph Lasky's ("Lasky") Partial Motion to Dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and Motion to Strike pursuant to Fed. R. Civ. P. 12(f) (collectively, the "Motion").

PRELIMINARY STATEMENT

Throughout Plaintiff's employment at Tulane School of Medicine, Lasky subjected her to harassment and discrimination. He constantly belittled and berated her, undermined her work, and interfered with her ability to perform her job. His conduct was extreme and outrageous and involved a pattern of deliberate, repeated harassment, which caused her severe emotional distress. At times, his behavior was physically threatening and put her in reasonable apprehension that he would use physical force or violence. She, therefore, brought the instant lawsuit alleging, *inter alia*, claims for intentional infliction of emotional distress and civil assault. Unsurprisingly, she was not his only victim. Lasky subjected other women to this unlawful conduct.

Trying to escape the consequences of his actions, Lasky brings this Motion, seeking to dismiss the intentional infliction of emotional distress and civil assault claims, and to strike any "pattern or practice" allegations in the Complaint. Plaintiff's claims for intentional infliction of emotional distress and civil assault have both been sufficiently pled. Additionally, the "pattern or practice" allegations are relevant to her allegations and Lasky has provided no basis for striking them. The Motion should be denied in its entirety.

STATEMENT OF RELEVANT FACTS[1]

From 2015 until her unlawful termination on June 30, 2019, Plaintiff was an Associate Professor of Medicine in the Department of Medicine at the Tulane School of Medicine and held

---

[1] This statement is limited to facts asserted in the Complaint.

1

faculty appointments in both pulmonary medicine and rheumatology.[2,3] She first worked in the Immunology Section but was later transferred for logistical reasons to the Pulmonary Section under the direct supervision of Lasky.[4]

Throughout her employment, Lasky ridiculed and intimidated Plaintiff on a regular basis and made constant derogatory remarks to her. For example, in 2016, when Lasky and Plaintiff were convened in a small physician work room at a Tulane clinic, she inquired about how funds from her pharmaceutical company sponsored trials would be applied to support her salary.[5] Lasky, in response, started yelling at her with his arms flailing angrily towards her in the small space and said "I'm sick of this! All this questioning! Do you think I'm cheating you?"[6]

On another occasion on September 13, 2018 (the "September 2018 Incident"), while Plaintiff and Lasky were walking to his office for a meeting together, he berated her for not informing him that she was teaching an honors undergraduate class at Tulane University.[7] She attempted to remind him of the many occasions they had discussed the course including the fact that he signed approval forms related to her mentoring the students of that class in 2017, signed off on her evaluations, and that the class was also tied to a pulmonary fellow's research project that he had approved earlier in 2018.[8] Before she could finish a sentence, he exploded and moved close to her, red-faced, trembling and pointing his finger driving it into her face yelling: "if I say I

---

[2] Plaintiff's September 12, 2019 Complaint (Dkt. No. 1) ("Compl.") ¶ 18.
[3] The Motion contains many allegations that are not in the Complaint. The Court should, therefore disregard these allegations. *See Coleman v. Sears Home Improvement Prods.*, 16-cv-2537, 2017 U.S. Dist. LEXIS 40961 (E.D. La. Mar. 21, 2017) ("It is well established that, in deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), a district court may not 'go outside the complaint.'").
[4] Compl. ¶ 26.
[5] *Id*. ¶ 45.
[6] *Id*.
[7] *Id*. ¶ 49.
[8] *Id*.

wasn't told about something, that's the end of it and I wasn't told about it!"[9] Despite Plaintiff saying nothing, standing there stunned and fearful yet again by his violent aggressive response, he continued relentlessly yelling at her as she stood speechless, saying "Do you understand? Stop it! You just stop it now! Stop it now!"[10] She then began moving away from him slowly stating, to assuage him but moving to safety, that she could not meet with him now but promised to meet with him when he calmed down and collected himself.[11] He hollered at her that they had to meet "NOW!" and, still gesturing with his pointed finger toward her face, yelled at her that "we have things that need to be talked about!"[12]

Similarly, shortly before that incident, while Plaintiff was explaining a research project to Lasky, he interrupted her first sentence and, in a harsh voice, menacingly chided her, while pointing his finger at her and yelling: "We don't need you thinking! We need you working."[13]

Lasky also undermined Plaintiff's performance and directly interfered with her ability to do her job. For example, in 2017, while in the clinic together, they were discussing a mutual patient and Lasky was hovering over her as she was documenting the patient's heart catheterization results.[14] Lasky had roughly calculated the pulmonary vascular resistance ("PVR")—an important value that determines the course of treatment for a patient—as a ballpark figure in his head.[15] Plaintiff began calculating the actual PVR value to document in the patient's notes and inform the treatment plan when Lasky started yelling at her angrily: "What are you doing? Stop it! You don't

---

[9] *Id*.
[10] *Id*.
[11] *Id*. ¶ 50.
[12] *Id*.
[13] *Id*. ¶ 48.
[14] *Id*. ¶ 47.
[15] *Id*.

3

need to calculate it, I already told you what it was!"[16] He remained hovering over her, and she was too shocked and intimidated to continue the patient's calculation with him in her proximity and had to wait to complete her documentation when he was not around.[17]

On another occasion in late 2017, Plaintiff brought Lasky, for his approval, an advanced sarcoidosis registry study for which the Section would be paid $1,500 for every two patients enrolled.[18] Shortly after, when the study was ready to enroll patients, Lasky's Section would not let her enroll patients in a study that was ready to go and "parked it," in favor of advancing a study of a male faculty member that was in the process of being set up and not ready for enrollment any time in the near future.[19] Plaintiff repeatedly asked that the study be allowed to move forward and that she did not need any additional nursing resources from the Section other than to assist with spinning and batch shipping of patient samples.[20] Nevertheless, she was not allowed to move forward.[21]

Additionally, Lasky was in charge of the clinics at Tulane University in which he and Plaintiff saw patients.[22] He ignored all of her repeated requests for adequate nursing support and a development of standardized operational protocols even though she was often in clinics without any access to nursing staff and would have to perform nursing functions herself in addition to her physician functions for these complicated patients with multi-organ life-threatening diseases.[23]

---

[16] *Id.*
[17] *Id.*
[18] *Id.* ¶ 39.
[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* ¶ 40.
[23] *Id.*

4

Lasky also frequently made Plaintiff fear that he was going to physically harm her. In response to her work-related questions, he would frequently yell and get close to her in a physically threatening manner, raising his finger in her face, while making demeaning statement such as "stop it! just stop it now! Do you understand? Just stop it!"[24] In fact, during the September 2018 Incident, she was fearful when he gestured with his pointed finger toward her face while yelling at her that "we have things that need to be talked about!"[25]

## PROCEDURAL HISTORY

Plaintiff asserts five claims in her Complaint: gender discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") against Tulane School of Medicine and Tulane University (collectively, "Tulane"); retaliation under Title VII against Tulane; hostile work environment under Title VII against Tulane; violations of the Equal Pay Act of 1963 against all Defendants; hostile work environment under the LEDL against all Defendants; assault under the Louisiana Civil Code against Lasky; and intentional infliction of emotional distress under Louisiana common law against Lasky.[26] In his January 6, 2020 Motion, Lasky seeks to dismiss the assault and intentional infliction of emotional distress claims, and to strike all "pattern and practice" allegations.

---

[24] *Id.* ¶ 46.
[25] *Id.* ¶ 50.
[26] By Notice dated December 19, 2019 (Dkt. No. 11), Plaintiff voluntarily dismissed her Fifth and Sixth Causes of Action under the Louisiana Employment Discrimination Law ("LEDL").

5

LEGAL ARGUMENT

I.    LASKY'S PARTIAL MOTION TO DIMISS MUST BE DENIED

    A.    Standard of Review

"When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take the factual allegations of the complaint as true and resolve any ambiguities regarding the sufficiency of the claim in plaintiff's favor." *Peters v. Transocean Offshore, Inc.*, 00-cv-994-LMA, 2000 U.S. Dist. LEXIS 9355, at *4 (E.D. La. June 28, 2000) (quoting *Broadway v. Slater*, 99-cv-2705, 2000 U.S. Dist. LEXIS 2251, at *1 (E.D. La. Feb. 28, 2000)) (internal quotations omitted). "The complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief." *Id*. (quoting *Broadway*, 2000 U.S. Dist. LEXIS 9355, at *1) (internal quotations omitted). Moreover, "[m]otions to dismiss for failure to state a claim are viewed with disfavor." *Id*. (quoting *Broadway*, 2000 U.S. Dist. LEXIS 9355, at *1) (internal quotations omitted).

    B.    Plaintiff's Intentional Infliction of Emotional Distress Claim Must be Upheld

"To recover for intentional infliction of emotional distress, a plaintiff must demonstrate the following: (1) extreme and outrageous conduct by the defendant; (2) severe emotional distress suffered by the plaintiff; and (3) the defendant's desire to inflict severe emotional distress or knowledge that severe emotional distress would be certain or substantially certain to result from his conduct." *Bakay v. Posigen*, 18-cv-5902, 2018 U.S. Dist. LEXIS 208559, at *9 (E.D. La. Dec. 11, 2018). "The extent and the level of defendant's conduct is a factual determination that must be decided on a case by case basis. In a 12(b)(6) motion, plaintiff is only required to allege sufficient facts which state a claim for this intentional tort." *Baker v. Starwood Hotel & Resort Worldwide*, 98-cv-2076, 1998 U.S. Dist. LEXIS 19229, at * 10 (E.D. La. Dec. 4, 1998).

"In cases of employment disputes, a cause of action for intentional infliction of emotional distress exists only when the case involves a pattern of deliberate, repeated harassment over a period of time." *Chen v. Ochsner Clinic Found.*, 13-cv-5808, 2014 U.S. Dist. LEXIS 3872, at *9 (E.D. La. Jan. 12, 2014) (quoting *Nicholas v. Allstate Ins. Co.*, 765 So.2d 1017, 1025 (La. 2000)) (internal quotations omitted). However, "a plaintiff's status as an employee may entitle him to a greater degree of protection from insult and outrage by a supervisor with authority over him than if he were a stranger." *Lara v. Frito-Lay, Inc.*, 01-cv-2598, 2002 U.S. Dist. LEXIS 7899, at *5-6 (E.D. La. Apr. 19, 2002) (quoting *White v. Monsanto Co.*, 585 So. 2d 1205, 1210 (La. 1991)) (internal quotations omitted).

Courts in this District regularly uphold intentional infliction of emotional distress claims in the employment context where employers constantly berate their employees. For example, in *Weathers v. Marshalls of MA, Inc.*, 02-cv-717, 2002 U.S. Dist. LEXIS 14333, at *11 (E.D. La. July 31, 2002), the court denied the employers' motion to dismiss the intentional infliction of emotional distress claim where the assistant manager made "constant derogatory remarks to plaintiff because of her race." Similarly, in *Lara v. Frito-Lay, Inc.*, 2002 U.S. Dist. LEXIS 7899, at *3, 7, the court denied the employer's motion to dismiss the plaintiff's intentional infliction of emotional distress claim where the employee pled that he was "subjected to a barrage of ridicule and intimidation on a daily basis" by his supervisor and that his supervisor undermined his performance and directly interfered with his ability to do his job.

Here, Plaintiff has adequately asserted that Lasky consistently berated her throughout her employment by yelling at her whenever they engaged in conversations.[27] He further undermined

---

[27] Cmpl. ¶¶ 47, 49, 50.

her performance and interfered with her ability to do her work.[28] He did so to intimidate her. And it worked. His intentional acts caused her great distress. The Motion must, therefore, be denied.

Lasky incorrectly asserts that Plaintiff's allegations regarding his conduct does not amount to the "extreme and outrageous" behavior required for this claim. In doing so, he relies on *Beaudoin v. Hartford Acc. & Indem. Co.*, 594 So.2d 1049, 1050 (La.App. 3rd Cir. 1992), *writ denied*, 598 So.2d 356, which is easily distinguishable. There, the appellate court affirmed the lower court's dismissal of an intentional infliction of emotional distress claim <u>after a trial on the merits</u>. The plaintiff presented evidence that the employer regularly raised his voice, cursed at her, called her names and went into violent, screaming rages, while the employer presented evidence, including testimony from other workers, to the contrary. The lower court credited the employer and, therefore, dismissed the intentional infliction of emotional distress claim. The appellate court affirmed dismissal of the claim, noting that "[w]hen there is conflict in testimony, reasonable evaluations of credibility and reasonable inferences should not be disturbed on review."[29] Here, unlike in *Beaudoin*, the parties are at the pleading stage, and have not even begun discovery. Plaintiff's intentional infliction of emotional distress allegations are sufficient at the pleading stage.

Lasky's reliance on *Purcell v. Tulane University of Louisiana*, 16-cv-1834, 2017 U.S. Dist. LEXIS 80903 (E.D. La. May 25, 2017) is similarly misplaced. There, the court dismissed the claim and noted that it was not within the employment context and the parties did not have an employee-

---

[28] *Id*. ¶¶ 39, 40, 47.
[29] Lasky's claim that the court in *Beaudoin* found that the employer's conduct was not extreme and outrageous where he regularly raised his voice and cursed at the employee is incorrect. The court did not make this finding. Instead, the *Beaudoin* plaintiff presented evidence that the employer behaved in this manner, but the employer presented conflicting evidence, and the court ultimately credited the employer after trial. The court did not hold that the employer's conduct would not have been considered extreme and outrageous even if it had credited the plaintiff.

8

supervisor relationship. *Id*. at 18. Here, on the other hand, Plaintiff and Lasky indisputably had an employee-supervisor relationship.

### C. Plaintiff's Assault Claims Must Be Upheld

"Louisiana law defines an assault as an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." *Rodgers v. Gusman*, 16-cv-16303, 2019 U.S. Dist. LEXIS 123273, at *14 (E.D. La. July 24, 2019) (quoting La. Rev. Stat. Ann. § 14:36) (internal quotations omitted). "Battery is 'the intentional use of force or violence upon the person of another, or the intentional administration of a poison or other noxious liquid or substance to another." *Id*. at *14-15 (quoting La. Rev. Stat. Ann. § 14:33). A plaintiff "need only satisfy general federal notice pleading regarding [an assault] claim[]." *Oyefodun v. Dillard Univ.*, 03-cv-0115, 2003 U.S. Dist. LEXIS 26175, at *10 (E.D. La. June 26, 2003) (quoting *Morin v. Caire*, 77 F.3d 116, 123 (5th Cir. 1996)) (internal quotations omitted).

Here, Plaintiff has adequately pled a civil assault claim because she asserts that Lasky intentionally put her in reasonable apprehension of receiving a battery when he repeatedly yelled demeaning statements to her, while getting close to her in a physically threatening manner and raising his finger in her face.[30] This caused her to fear that he would he would use force or violence upon her. Accordingly, Plaintiff's assault claim must be upheld.

In the Motion, Lasky fails to cite a single case in which a court dismissed a civil assault claim. He, instead, cites two cases in which assault claims were upheld, and asserts that Plaintiff's civil assault claim must be dismissed because the facts of those cases differ from the instant matter. In doing so, he only provides evidence of what can constitute an assault and fails to provide any evidence of what does not constitute an assault. The Motion must, therefore, be denied.

---

[30] Cmpl. ¶¶ 46, 48, 50.

II. <u>LASKY'S MOTION TO STRIKE MUST BE DENIED</u>

 A. <u>Standard of Review</u>

"A motion to strike under Rule 12(f) is a drastic remedy to be resorted to only when required for the purposes of justice[.]" *Cousin v. Small*, 00-cv-0069, 2000 U.S. Dist. LEXIS 11796, at *10 (E.D. La. Aug. 4, 2000) (quoting *Augustus v. Board of Pub. Instruction of Escambia County*, 306 F.2d 862, 868 (5th Cir. 1962)) (internal quotations omitted). A motion to strike, therefore, "should only be granted when the allegations are prejudicial to the defendant or immaterial to the lawsuit." *Id*. (quoting *Johnson v. Harvey*, 96-cv-3438, 1998 U.S. Dist. LEXIS 14203, at *7 (E.D. La. Sept. 8, 1998)) (internal quotations omitted). The movant can only establish immateriality "by showing the challenged allegations can have no possible bearing upon the subject matter of the litigation." *Id*. (quoting *Sadler v. Benson Motors Corp.*, 97-cv-1083, 1997 U.S. Dist. LEXIS 7118, at *1 (E.D. La. May 15, 1997)) (internal quotations omitted).

 B. <u>The "Pattern and Practice" Language in the Complaint is Relevant</u>

Lasky claims that Plaintiff may not assert that he engaged in a "pattern and practice" of conduct that was discriminatory towards women.[31] He relies exclusively on *Breaux v. Bollinger Shipyards, LLC*, 16-cv-2331, 2017 U.S. Dist. LEXIS 42910, at *22 (E.D. La. Mar. 23, 2017), in which the court denied a defendants' motion to dismiss the plaintiff's pattern or practice allegations because the plaintiff stipulated that he was not bringing a separate pattern or practice claim. He relies entirely on *dicta* in *Breaux*, which states that "a pattern-or-practice method or proving discrimination is unavailable in a private, non-class action[.]" *Id*. This, however, does not

---

[31] Notably, Lasky does not identify which allegations he considers to be "pattern or practice" allegations and, instead, asserts that the Complaint contains a "number of allegations" that Lasky engaged in a "pattern and practice" of conduct that was discriminatory. Plaintiff, therefore, assumes that Lasky seeks to strike only those sentences containing the words "pattern or practice."

10

provide that a complaint cannot include allegations containing the words "pattern or practice," or allegations about a pattern or practice of discrimination. *Id*. Moreover, *Breaux* does not provide that "pattern or practice" allegations are irrelevant to discrimination claims such that a motion to strike those allegations from a complaint would be warranted. *Id*.; *Cousin v. Small*, 2000 U.S. Dist. LEXIS 11796, at *10.

Here, Plaintiff stipulated that she is not bringing a separate pattern of practice claim and, therefore, the motion to strike must be denied as moot. *Breaux*, 2017 U.S. Dist. LEXIS 42910, at *22. Moreover, the "pattern or practice" language is not irrelevant and certainly has, at the least, a possible bearing on the subject matter of the litigation. *Cousin v. Small*, 2000 U.S. Dist. LEXIS 11796, at *10. Lasky's Motion to Strike should, therefore, be denied.

## CONCLUSION

For the foregoing reasons, the Court should deny Lasky's Motion in its entirety.

| | |
|---|---|
| Dated: New Orleans, Louisiana<br>February 4, 2020 | Dated: New York, New York<br>February 4, 2020 |
| Respectfully Submitted, | Respectfully Submitted, |
| THE VASQUEZ LAW OFFICE | LIPSKY LOWE LLP |
| s/ Jessica M. Vasquez<br>Jessica M. Vasquez<br>400 Poydras Street, Suite 900<br>New Orleans, Louisiana 70130<br>504.571.9582<br>jvasquez@vasquezlawoffice.com | s/ Douglas B. Lipsky<br>Douglas B. Lipsky (*Via Pro Hac Vice*)<br>420 Lexington Avenue, Suite 1830<br>New York, New York 10170-1830<br>212.392.4772<br>doug@lipskylowe.com |