# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **LESLEY ANN SAKETKOO, MD, MPH** | **CIVIL ACTION** |
| **VERSUS** | **No. 19-12578** |
| **TULANE UNIVERSITY SCHOOL OF MEDICINE, ET AL.** | **SECTION I** |

## ORDER & REASONS

Before the Court is defendant Dr. Joseph Lasky's ("Lasky") motion[1] to dismiss counts six[2] and seven of plaintiff Dr. Lesley Ann Saketkoo's ("Saketkoo") complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Lasky also asks the Court to strike certain allegations in the complaint pursuant to Rule 12(f) or "stat[e] [that] [p]laintiff may not use a pattern or practice method of proof with respect to her claims."[3] Fed. R. Civ. P. 12(f). For the following reasons, the motion is granted in part and denied in part.

## I.

Accepting all of the factual assertions in Saketkoo's complaint as true, as they pertain to Lasky, they are as follows: Saketkoo worked as an Associate Professor of Medicine in the Department of Medicine at the Tulane School of Medicine from 2015

---

[1] R. Doc. No. 15.
[2] Two separate claims in the complaint are labeled "Sixth Cause of Action." *See* R. Doc. No. 1, at 33–35. However, Saketkoo has stipulated to the dismissal of her sixth cause of action for hostile work environment under the Louisiana Employment Discrimination Law, La. R.S. § 23:301, *et seq*. R. Doc. No. 11. The remaining sixth cause of action, assault pursuant to La. Civ. Code art. 2315, is one of the two counts that Lasky argues should be dismissed.
[3] R. Doc. No. 15, at 2; R. Doc. No. 34-2, at 6.

until her termination in 2019.[4] Saketkoo held faculty appointments in both pulmonary medicine and rheumatology.[5] Saketkoo initially worked in the Immunology Section, but she was later transferred for logistical reasons to the Pulmonary Section, where she was under the direct supervision of Lasky.[6]

Saketkoo alleges that in 2016, when she and Lasky were convened in a small physician work room at a Tulane clinic, she inquired about how funds from her pharmaceutical company-sponsored trials would be applied to support her salary.[7] In response, Lasky allegedly "frighteningly flew off the handle," began flailing his arms angrily towards her in the small space, and yelled, "I'm sick of this! All this questioning! Do you think I'm cheating you?"[8]

In 2017, while Saketkoo and Lasky were in the clinic together discussing a mutual patient, Saketkoo alleges that Lasky "hover[ed] over" her as she documented the patient's heart catheterization results.[9] Lasky had mentally calculated an important metric related to the patient's heart evaluation when Saketkoo began calculating the precise value on the computer.[10] Lasky allegedly became angry that Saketkoo was performing her own calculation and yelled, "What are you doing? Stop it! You don't need to calculate it, I already told you what it was!"[11] Saketkoo had to

---

[4] R. Doc. No. 1, at 5 ¶ 18.
[5] *Id.*
[6] *Id.* at 7 ¶ 26.
[7] *Id.* at 13–14 ¶ 45.
[8] *Id.*
[9] *Id.* at 14 ¶ 47.
[10] *Id.* at 14–15 ¶ 47.
[11] *Id.*

2

wait to complete her documentation until Lasky stopped hovering over her, as she was "too shocked and intimidated" to continue the calculation with Lasky present.[12]

On another occasion in late 2017, Saketkoo sought Lasky's approval for a study that would pay the Pulmonary Section $1,500 for every two patients enrolled.[13] Once the study was prepared and ready for patients, the section would not allow Saketkoo to enroll any patients and instead "parked it" in favor of advancing a male faculty member's study that was still being prepared and not ready for patients.[14] Saketkoo repeatedly requested that the study be allowed to move forward and assured Lasky that it would not require any additional nursing resources from the section other than to assist with shipping patient samples.[15] Lasky still did not allow her study to proceed.[16]

In the late summer of 2018, Lasky allegedly interrupted Saketkoo while she was explaining a research project and "in a harsh voice, menacingly chided her, while pointing his finger at her" and saying, "We don't need you thinking! We need you working."[17]

On September 13, 2018, Saketkoo alleges that while she and Lasky were walking to his office for a meeting together, he "berated" her for not informing him that she was teaching an honors undergraduate course at Tulane University.[18]

---

[12] *Id.*
[13] *Id.* at 12 ¶ 39.
[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.* at 15 ¶ 48.
[18] *Id.* at 15–16 ¶ 49.

3

Saketkoo attempted to remind him of the previous occasions during which they had discussed the course, including when he had signed off on approval forms, evaluations, and a fellow's research project related to the course.[19]

Before Saketkoo "could finish a sentence, [Lasky] exploded and moved close to her, red-faced, trembling and pointing his finger driving it into her face yelling: 'if I say I wasn't told about something, that's the end of it and I wasn't told about it!'" Saketkoo remained silent, as she was "stunned and fearful yet again by his violent[,] aggressive response[.]"[20] Lasky continued to yell, saying, "Do you understand? Stop it! You just stop it! Stop it now!"[21] Saketkoo slowly began moving away from him and stated that she would meet with him once he had calmed down and collected himself.[22] Lasky demanded that they meet immediately, and yelled with his finger pointed toward her face that, "[W]e have things that need to be talked about!"[23] Saketkoo was allegedly fearful of being physically harmed by Lasky and continued to retreat away from him.[24] She told him that she would only meet with him at that moment if his supervisor, the Chair of the Department of Medicine, was also present.[25]

---

[19] *Id.*
[20] *Id.*
[21] *Id.*
[22] *Id.* at 16 ¶ 50.
[23] *Id.*
[24] *Id.*
[25] *Id.*

Immediately after the incident, Saketkoo, "shaken and seeking help," sought advice from a colleague on what to do about Lasky's outburst.[26] Her colleague advised her not to go to the Chair of the Department and report the incident, as she feared Saketkoo would not be taken seriously and would lose credibility as a "hysterical wom[a]n."[27] Saketkoo took her complaints to the chief of another section within the Department of Medicine who advised that she should report her grievances through the chain of command.[28]

Lasky allegedly also denied Saketkoo adequate resources while she was working at Tulane University clinics, which he oversaw.[29] Lasky denied Saketkoo's repeated requests for adequate nursing support and the development of standardized operational protocols, even though Saketkoo often had to work in clinics without nursing staff and would have to perform both nursing and physician functions for patients with complicated cases.[30]

Saketkoo also alleges that Lasky frequently made her fearful that he was going to physically harm her.[31] In response to Saketkoo's work-related questions, Lasky would allegedly get close to Saketkoo in a "physically threatening manner," raise his finger to her face, and yell demeaning statements at her, such as "[S]top it! [J]ust stop it now! Do you understand? Just stop it!"[32] Saketkoo repeatedly requested

---

[26] *Id.* at 16 ¶ 51.
[27] *Id.*
[28] *Id.* at 16–17 ¶ 51.
[29] *Id.* at 12 ¶ 40.
[30] *Id.*
[31] *Id.* at 14 ¶ 46; R. Doc. No. 31, at 6.
[32] R. Doc. No. 1, at 14 ¶ 46.

5

that Lasky not speak to her in that manner, but he continued to do so throughout her employment with the Tulane School of Medicine.[33]

## II.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

In assessing the complaint, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). Furthermore, "the Court must typically limit itself to the contents of the pleadings, including attachments thereto." *Admins. of the Tulane Educ. Fund v. Biomeasure, Inc.*, 08-

---

[33] *Id.*

6

5096, 2011 WL 4352299, at *3 (E.D. La. Sept. 6, 2011) (Vance, J.) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)). "[T]he Court may consider documents that are essentially 'part of the pleadings'—that is, any documents attached to or incorporated into the plaintiff's complaint by reference that are central to the plaintiff's claim for relief." *Zerangue v. Lincoln Nat'l Life Ins. Co.*, No. 19-1939, 2019 WL 2058984, at *2 (E.D. La. May 9, 2019) (Feldman, J.) (quoting *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004)). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

### A.

Count six of plaintiff's complaint alleges that "[d]uring the September 13, 2018 meeting, Dr. Lasky intentionally assaulted Dr. Saketkoo and put her in reasonable apprehension of receiving a battery" because he "threatened Dr. Saketkoo with imminent physical harm and has the physical ability to carry out the threat."[34]

Lasky argues that a single incident of allegedly yelling at Saketkoo "while waiving his finger toward [her] in close proximity" does not rise to the level of assault as defined in La. Rev. Stat. § 14:36.[35] Lasky further argues that based on Saketkoo's allegations, Lasky made it clear that he wanted to resolve the dispute through further

---

[34] *Id.* at 34–35 ¶¶ 146–48.
[35] R. Doc. No. 34-2, at 5.

7

conversation, not physical contact, by stating, "[W]e have things that need to be talked about!" and allowing Saketkoo to walk away unscathed.[36]

Saketkoo argues in response that Lasky did not just yell at her, but also got close to her "in a physically threatening manner" and "raise[ed] his finger in her face," which put her in reasonable apprehension that Lasky would use force or violence against her.[37]

*i.*

The Louisiana Civil Code recognizes the tort of assault under article 2315. Assault is "an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. Rev. Stat. § 14:36. Battery is "the intentional use of force or violence upon the person of another[.]" *Id.* § 14:33; *see also Landry v. Bellanger*, 2002-1443, p. 6 (La. 5/20/03); 851 So. 2d 943, 949 ("A battery is a harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff to suffer such a contact[.]") (citation omitted).

"Mere words do not constitute an assault." *Hanna v. Shell Expl. & Prod., Inc.*, 2017-0293, p. 24 (La. App. 4 Cir. 12/6/17); 234 So. 3d 179, 196 (quoting *Muslow v. A.G. Edwards & Sons, Inc.,* 509 So.2d 1012 (La. App. 2 Cir. 1987), *writ denied,* 512 So.2d 1183 (La. 1987)) (quotation marks omitted). However, "a combination of threats, present ability to carry out the threats, and reasonable apprehension of harmful or offensive contact may suffice." *Id.*

---

[36] *Id.*
[37] R. Doc. No. 31, at 10.

For example, in *Gaidry v. Ochsner Health System*, the court held that allegations that the defendant stated "I'm sick of you" while "lung[ing] for the doorway" in which the plaintiff was standing stated a plausible claim for assault. No. 09-4433, 2010 WL 11538597, at *7 (E.D. La. July 21, 2010) (Zainey, J).

On the other hand, allegations that a defendant, who was a more "imposing figure" than the plaintiff, "threw himself across his desk and swung his hand at [the plaintiff] with a finger extended" were insufficient to demonstrate that the plaintiff was in reasonable apprehension that the defendant was going to strike or injure him. *Muslow v. A.G. Edwards & Sons, Inc.*, 509 So. 2d 1012, 1020 (La. App. 2 Cir. 6/10/1987), *writ denied,* 512 So. 2d 1183 (La. 1987). The defendant never verbally threatened the plaintiff with physical harm, the defendant did not have a weapon or close his fist "as if a blow was about to be struck[,]" the parties were always separated by a desk, and the office door remained open during the encounter. *Id.*

Similarly, in *Groff v. Southwest Beverage Co., Inc.*, the court held that the plaintiff's apprehension of imminent harmful or offensive contact was unreasonable, given that the defendant had no weapon, did not verbally threaten physical harm, and did not move toward the plaintiff in a manner that would indicate a threat of force or violence. 2008-625, p. 6 (La. App. 3 Cir. 11/5/08); 997 So. 2d 782, 787–88. Furthermore, a desk separated the plaintiff and defendant during the defendant's alleged rant, three other people were in the room, and the plaintiff admitted that the defendant was banging on the desk for emphasis—which undercut his argument that such banging made him fearful of being physically harmed. *Id.*

*ii.*

During the September 13, 2018 meeting between Saketkoo and Lasky, Saketkoo alleges that Lasky "berated" her for not informing him that she was teaching an honors undergraduate course, and that he exploded and "moved close to her, red-faced" and "trembling," with his finger pointed in her face, yelling that she should not be questioning him as to whether she had previously told him about the course.[38] Saketkoo became fearful due to his "violent[,] aggressive response."[39] Lasky continued to yell at Saketkoo as she remained silent, and Saketkoo began to slowly move away from him.[40] Saketkoo was shaken by the incident and sought help from both a colleague and another section chief as to what to do about Lasky's outburst.[41]

Although a close call, when construed in the light most favorable to Saketkoo, the allegations in the complaint state a facially plausible claim for assault. Saketkoo, of course, must ultimately prove that such allegations did, in fact, occur. At this early stage of the proceedings, however, the Court is unwilling to dismiss the claim pursuant to Rule 12(b)(6). The Court is of the opinion that further factual development is in order.

---

[38] R. Doc. No. 1 at 15–16 ¶ 49.
[39] *Id.*
[40] *Id.*
[41] *Id.* at 16–17 ¶ 51.

**B.**

Count seven of the complaint alleges a claim for intentional infliction of emotional distress based on Lasky's "pattern of on-going harassment" and "physically threatening acts" directed towards Saketkoo.[42]

Lasky argues that the claim must be dismissed because his alleged conduct amounts to nothing more than the types of "insults, indignities, and threats" that Louisiana law makes clear do not support a claim for intentional infliction of emotional distress.[43] Saketkoo argues that Lasky's conduct is actionable under such a claim because "Lasky consistently berated her throughout her employment" and intentionally intimidated her by constantly yelling and undermining her performance and ability to complete her work.[44]

*i.*

To state a claim for intentional infliction of emotional distress under Louisiana law, "a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

"Louisiana courts . . . have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that

---

[42] *Id.* at 35 ¶¶ 151–152.
[43] R. Doc. No. 15-1, at 7.
[44] R. Doc. No. 31, at 8–9.

courts require truly outrageous conduct before allowing a claim even to be presented to a jury." *Perrone v. Rogers*, 2017-509, p. 6, (La. App. 1 Cir. 12/18/17); 234 So. 3d 153, 157. "Outrageous conduct is a nebulous concept, as it does not refer to any specific type of conduct and it may even refer to a pattern of conduct." *Id.* "Conduct which is merely tortuous or illegal does not rise to the level of being extreme and outrageous." *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 10–11 (La. 8/31/00); 765 So. 2d 1017, 1025. Rather, outrageous conduct is "conduct which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stevenson v. Lavalco, Inc.*, 96-28020, p. 3 (La. App. 2 Cir. 2/28/96); 669 So. 2d 608, 611 (citation omitted).

"Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities[,]" as "[p]ersons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Hanna v. Shell Expl. & Prod., Inc.*, 2017-0293, p. 30 (La. App. 4 Cir. 12/6/17); 234 So. 3d 179, 199–200 (internal quotation marks and citation omitted). "The distress suffered must be such that no reasonable person could be expected to endure it." *Perrone*, 234 So. 3d at 158. "Liability arises only where the mental suffering or anguish is extreme." *Id.*

> Further, the defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered. But the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. The actor's conduct must be intended or calculated to cause severe emotional

12

distress and not just some lesser degree of fright, humiliation, embarrassment, worry or the like.

*Id.* (internal citation omitted).

Louisiana law "affords greater protection to a plaintiff in an employment setting where the alleged wrongdoer is a supervisor with authority over the plaintiff." *Groff*, 997 So. 2d at 786 (citing *White*, 585 So. 2d at 1205). Nonetheless, recognition of an intentional infliction of emotional distress claim in a workplace setting is "usually 'limited to cases involving a pattern of deliberate, repeated harassment over a period of time.'" *Id.* (quoting *White*, 585 So. 2d at 1210). "Not every verbal encounter may be converted into a tort; on the contrary, some safety valve must be left through which irascible tempers may blow off relatively harmless steam." *Hanna*, 234 So. 3d at 200 (internal quotation marks and citation omitted). "Moreover, the employer's conduct must be intended or calculated to cause severe emotional distress, not just some lesser degree of fright, humiliation, embarrassment or worry." *Nicholas*, 765 So. 2d at 1027 (quoting *White,* 585 So.2d at 1210).

### ii.

Saketkoo alleges that Lasky intentionally intimidated her on five separate occasions over a two-year period by raising his voice in response to work-related questions, moving close to her in a "physically threatening manner," and waiving his finger in her face.[45] Saketkoo alleges that such encounters continued throughout her employment and that Lasky undermined her ability to adequately perform her work

---

[45] R. Doc. No. 1, at 14 ¶ 46.

13

by denying her resources and halting her research project in favor of supporting a male colleague's project.[46] Saketkoo's allegations do not reflect "a pattern of deliberate, repeated harassment" so as to transcend "all possible bounds of decency" in a civilized community and the allegations do not rise to the level of extreme and outrageous conduct. *Stevenson*, 669 So. 2d at 611.

Saketkoo's reliance on *Weathers v. Marshalls of MA, Inc.*, No. 02-717, 2002 WL 1770927, at *4 (E.D. La. July 31, 2002) (Engelhardt, J.) is misplaced. In *Weathers*, the court held that the plaintiff's allegations that her supervisor made constant, racially-motivated derogatory remarks to her, including racial slurs and comments about "lazy black employees," were sufficient to state a claim for intentional infliction of emotional distress. *Id.* Lasky's alleged remarks, such as "I'm sick of this! All this questioning! Do you think I'm cheating you?" and "We don't need you thinking! We need you working,"[47] are considerably less severe than the comments at issue in *Weathers* and are the type of mere insults and indignities that Louisiana courts have held do not rise to the level of severe and outrageous conduct.[48]

Accordingly, the Court must dismiss Saketkoo's claim for intentional infliction of emotional distress against Lasky.

---

[46] *Id.*
[47] R. Doc. No. 1, at 13–15 ¶¶ 45, 48.
[48] Saketkoo's reliance on *Lara v. Frito-Lay, Inc.*, No. 01-2598, 2002 WL 662950, at *2 (E.D. La. Apr. 22, 2002) (Fallon, J.) is similarly misplaced, as the plaintiff in that case alleged that his supervisor harassed him, used racial slurs, and physically abused him over a period of two years. Saketkoo does not allege any physical abuse by Lasky.

14

## III.

Lasky requests that the Court strike Saketkoo's pattern or practice allegations from the complaint as irrelevant pursuant to Rule 12(f) or, alternatively, order that Saketkoo may not use a pattern or practice method of proof with respect to her claims.[49] Saketkoo alleges in her complaint that Lasky and other defendants engaged in a pattern and practice of discriminatory conduct towards women.[50]

Saketkoo has stipulated that she does not assert an independent pattern or practice claim.[51] Therefore, Lasky argues, the Court should strike the pattern and practice allegations in the complaint because a pattern or practice method of proving discrimination is unavailable in a private, non-class action.[52] Saketkoo contends that Fifth Circuit law does not hold that pattern or practice allegations are entirely irrelevant to discrimination claims and, accordingly, such allegations should not be stricken from the complaint.[53]

### A.

Pursuant to Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) further provides that the Court "may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading."

---

[49] R. Doc. No. 15, at 2.
[50] R. Doc. No. 1, at 8–12, ¶¶ 29, 31, 34, 38.
[51] R. Doc. No. 15-4; R. Doc. No. 31, at 12.
[52] R. Doc. No. 15-1, at 10.
[53] R. Doc. No. 31, at 12.

15

"Rule 12(f) motions are generally disfavored and rarely granted." *Matter of Am. River Transportation, Co., LLC*, No. 18-2186, 2019 WL 2847702, at *7 (E.D. La. July 2, 2019) (Lemmon, J.) (citing *Augustus v. Bd. of Pub. Instruction of Escambia Cty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)). A motion to strike under Rule 12(f) "'is a drastic remedy to be resorted to only when required for the purposes of justice [and] should be granted only when the pleading to be stricken has no possible relation to the controversy.'" *Id.* (quoting *Augustus*, 306 F.2d at 868).

"[D]isputed questions of fact 'cannot be decided on [a] motion to strike,' and, 'when there is no showing of prejudicial harm to the moving party, the courts generally are not willing to determine disputed and substantial questions of law upon a motion to strike.'" *Hoffman v. Bailey*, No. 13-5153, 2017 WL 1969540, at *6 (E.D. La. May 12, 2017) (Africk, J.) (quoting *Augustus*, 306 F.2d at 868). Deciding whether to strike certain material from a complaint lies within the Court's discretion. *Id.* (citing *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1168 (5th Cir. 1979)).

**B.**

Lasky is correct that "the pattern-or-practice method of proving discrimination is unavailable in a private, non-class action[.]" *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (citation omitted). However, the experiences of other female employees working with Lasky and the other defendants may be probative

and admissible under Federal Rule of Evidence 404(b) as showing, for instance, a "plan, scheme, or motive" to discriminate against Saketkoo.[54]

IV.

Accordingly,

**IT IS ORDERED** that Lasky's motion to dismiss count six of the complaint is **DENIED.**

**IT IS FURTHER ORDERED** that Lasky's motion to dismiss count seven of the complaint is **GRANTED,** and that count seven is **DISMISSED**.

**IT IS FURTHER ORDERED** that Lasky's motion to strike all pattern and practice allegations from the complaint is **DENIED.**

New Orleans, Louisiana, February 14, 2020.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[54] *See Dial v. Advance Auto Stores Co., Inc.*, No. 05-1025, 2008 WL 11422500, at *7 n.15 (N.D. Ala. Mar. 10, 2008). Saketkoo does not argue in opposition to Lasky's motion that pattern and practice allegations support her claims for assault and intentional infliction of emotional distress. *See* R. Doc. No. 31.