UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LESLEY ANN SAKETKOO, MD, MPH** * | | **CIVIL ACTION** |
| * | | |
| **Plaintiff,** * | | |
| * | | |
| **VERSUS** * | | **NO. 2:19-cv-12578** |
| * | | |
| **TULANE UNIVERSITY SCHOOL OF** * | | |
| **MEDICINE, ADMINISTRATORS OF** * | | |
| **THE TULANE EDUCATIONAL FUND,** * | | **JUDGE LANCE M. AFRICK** |
| **LEE HAMM, MD, AND JOSEPH** * | | |
| **LASKY, MD,** * | | |
| * | | |
| **Defendants** * | | **MAGISTRATE MICHAEL B. NORTH** |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO CONTINUE CUTOFF DATES**

Defendant, the Administrators of the Tulane Educational Fund ("Tulane") (the only Defendant remaining in this case), opposes Plaintiff's ongoing efforts to drag out these proceedings and ignore the Court's previous orders on this exact issue. It is surprising, and causes Defendant significant hardship, that Plaintiff is trying again to thwart this Court's clear directives by filing yet another motion a mere two weeks before the cut-off for filing of dispositive motions. This Honorable Court has repeatedly ruled that pre-trial deadlines will not be altered (R. Doc. 65, R. Doc. 98) and has already extended the discovery cutoff at the unilateral request of Plaintiff. (R. Doc. 53, R. Doc. 65). Tulane respectfully requests that the Court deny this Third Motion to Continue Cutoff Dates and again order the parties to adhere to the Scheduling Order currently in place.

A. **Plaintiff has failed to act diligently.**

This Court has already suggested during the August 5 status conference that Plaintiff's problem completing discovery within the proscribed deadline is of her own making. (R. Doc.

3860061-1

94).[1] Indeed, despite that the Court clearly stated in its August 5 Order that the then-planned deposition schedule should not be changed, Plaintiff chose to change it anyway – by canceling or postponing previously scheduled 30(b)(6) and other depositions.

Perhaps Tulane is "holding Plaintiff's feet to the fire", but Tulane understands it must adhere to the Court's deadlines and therefore repeatedly asked Plaintiff to identify desired deponents, and confirm the use of proposed dates, and responded to a continuum of new document and data requests. Tulane has been requesting deposition dates and identities of deponents since April. But, Plaintiff failed to respond or act diligently in identifying deponents and setting depositions, then demonstrated no regard whatsoever for the schedules of the witnesses when she unilaterally cancelled depositions that the witnesses had been holding on their calendars per Plaintiff's request.

While Plaintiff admittedly cannot control the threats posed by tropical weather, that witnesses were even scheduled to be deposed on August 24th and 26th is itself a function of Plaintiff's disregard of calendared depositions and careless attitude toward deadlines. Tulane was first prepared to present its designated 30(b)(6) witnesses for deposition on July 27th, which was canceled at Plaintiff's request. The 30(b)(6) deposition was then re-scheduled for August 18th and 19th – but, on August 17th, Plaintiff cancelled and moved the depositions previously scheduled for August 19th to August 24th.

Moreover, as of August 19th, Plaintiff had not stated her intent to depose anyone else, which undersigned counsel confirmed in writing to Plaintiff's counsel on that date. That Plaintiff is representing to the Court that additional depositions are now needed is curious – given the expired discovery cut-off and her previous inaction toward these depositions.

---

[1] In granting Plaintiff's motion seeking a continuance of expert report deadlines, the Court noted it "question[ed] the tardiness of the plaintiff's motion. (R. Doc. 65).

On August 23rd, the parties made a joint decision to postpone the August 24th depositions given the threat of two tropical storms/hurricanes. Tulane made no objection to presenting those witnesses who were supposed to appear on the 24th at a later date, given that the decision to postpone was made mutually out of consideration for the safety of all involved. However, the weather conditions of August 24th would have been irrelevant were it not for Plaintiff's unexplained last-minute decision to reschedule the 30(b)(6) deponents from August 19th to August 24th. That Plaintiff feels crippled by the current deadlines is again a condition of her own making.

### B.     Plaintiff mischaracterizes Tulane's document productions.

Tulane has at every opportunity engaged in a good-faith effort to locate documents responsive to Plaintiff's frequently changing, voluminous and unfocused document requests. Tulane employed litigation holds, reached out to many, many employees, and had its IT personnel conduct numerous digital searches in an effort to locate responsive documents. (*See* R. Doc. 97). Tulane complied with the Court's Order (R. Doc. 98) to complete, by August 15th, its review of the 200,000-plus documents generated by Plaintiff's overbroad search terms first provided to Tulane on July 14. Tulane made rolling productions as follows so as not to bombard the Plaintiff on the August 15th due date:

August 5, 2020: 1,154 documents (totaling 9,609 pages)

August 7, 2020: 222 documents (totaling 52 pages)

August 10, 2020: 906 documents (totaling 4,200 pages)

August 11, 2020: 60 documents (totaling 123 pages)

August 12, 2020: 108 documents (totaling 367 pages)

August 13, 2020: 18 documents (totaling 32 pages)

August 14, 2020: 104 documents (totaling 224 pages)

August 15, 2020: 197 documents (totaling 578 pages)

Any implication that Tulane inundated Plaintiff with documents on August 15 is, obviously incorrect. More than 37,000 pages of documents have now been produced to Plaintiff by Tulane, some 21,000 pages of which had already been produced prior to August 5th. Again a problem of her own making – if Plaintiff had focused her requests as suggested by Tulane and acted promptly to provide information on search terms – she would not have had to "endure" large production. Plaintiff's examples of "ongoing" document production do not demonstrate prejudice, are not good cause to continue cutoff dates, and are of Plaintiff's own making, particularly since recently requested documents have no bearing whatsoever on the required elements of Plaintiff's claims under Title VII or the Equal Pay Act.

First, what Plaintiff calls "one of the most critical documents in this case" (R. Doc. 103-1, p. 1) is an email sent *after Plaintiff filed suit* (and after Plaintiff had provided her lawsuit to Tulane patients and news media) containing anecdotal evidence of unpleasant workplace conversations a female physician in an entirely different section allegedly had with Dr. Lasky. The email makes no specific allegation of gender discrimination, harassment, or unequal pay, and no one referenced in the email ever made a complaint to Tulane about Dr. Lasky, gender discrimination, harassment, or unequal pay. That the female physician did not avail herself of Tulane's complaint process is an important factor in determining whether this post-hoc commentary by a non-similarly situated physician bears any relevance to Plaintiff's claims and/ or is admissible. Importantly, the email contains no information about Dr. Lasky's interactions with Dr. Saketkoo or any of Dr. Saketkoo's specific allegations – it cannot be used in any way to support Plaintiff's case. Plaintiff's representation that this presents "smoking gun" – type

evidence is disingenuous, at best.  Moreover, Plaintiff has been on notice that the participants in the email string might have information relating to the case for at least three months.  Tulane identified Dr. Mary Killackey, one of the physicians on the email chain, in its Answers to Plaintiff's Interrogatories dated May 20th, and identified Mary Brown (also featured in the "critical document") in its Supplemental Answers to Plaintiff's Interrogatories dated July 28th.  Plaintiff informed Tulane on August 7th that she "might" depose Mary Brown but to date has failed to respond to Tulane's repeated requests to confirm that.  Plaintiff had ample time to request depositions of Mary Killackey and/or Mary Brown prior to the discovery cutoff and should not be permitted to use Tulane's timely production as an excuse for her own failure to do so.  Finally, Plaintiff deposed Dr. Lasky on August 21, after the email was produced, and had the opportunity to question him about its contents.

Second, on August 18th, one of Tulane's 30(b)(6) designees referred to a single document called a Labor Report that she obtained via Tulane's internal financial system in preparation for her deposition.  During her deposition, the witness said she had reviewed other labor reports produced as part of Tulane's document production, but also noted that this Labor Report contained additional information about Plaintiff's productivity.  Tulane immediately obtained from the witness a digital copy of the Labor Report to which she referred and produced it to Plaintiff.

Third, with respect to the email messages referenced by Dr. Lasky in his deposition, it is not clear whether those e-mails were responsive to any of Plaintiff's voluminous Requests for Production to Tulane.  (Tulane's understanding of Plaintiff's discovery requests indicated those e-mails were not responsive.)  Regardless, once Dr. Lasky mentioned it in his deposition, Tulane as a courtesy promptly provided Plaintiff with the email chain Dr. Lasky referenced.

5

3860061-1

Fourth, to the extent that Plaintiff complains "information relevant to Plaintiff's Equal Pay Act claim disclosed on or about August 15 [sic]" should have been disclosed sooner, Tulane first objected to the production of this information on May 20th. Plaintiff waited until July 3rd to file a Motion to Compel. On July 16th, the Magistrate Judge ordered Tulane to proceed with the production, which Tulane did on August 5th. This extremely burdensome data set was not produced in native format because its native format is the Oracle payroll system, which requires a very expensive investment that law firms are not likely to have. Tulane's counsel (J. Livaudais) informed Plaintiff's counsel (M. Allweiss) that the salary data would be anonymized as to name but would include gender. Plaintiff's counsel indicated that he understood and accepted this. Rank and specialty area – data relevant to an Equal Pay Act claim, but never requested by Plaintiff – can be obtained via other records produced. Plaintiff now seeks a non-anonymized production *to her experts only*, i.e. not to counsel and not to Plaintiff. The names of faculty members are irrelevant and intrusive of non-parties' privacy. Individual names will not help Plaintiff prove her case. Relevant data for Plaintiff's salary discrimination claim --the data (other than the names) that she requested in her Request for Production, has been produced.[2] This issue too is not grounds for extending the discovery cutoff.

## C. **Plaintiff Has Not Shown Good Cause to Justify the Continuation of Cut-off Dates.**

Plaintiff does not even attempt to address the standard required for modification of the Scheduling Order – possibly because she cannot meet the diligence component of that standard. "Good cause" [for modification of a Scheduling Order] requires the party seeking relief to show that the deadlines cannot reasonably be met **despite the diligence of the party needing the**

---

[2] If it is ever the directive of the Court that the highly confidential pay data of some 350 of Plaintiff's former colleagues be produced *by name* to Plaintiff, Tulane will need time to inform each of them that their confidential data is being produced to Plaintiff because of a Court Order. But, Tulane respectfully submits that the identities of the faculty members is irrelevant: the relevant information (gender, rank, specialty) has been provided.

**extension.**" *Galliano Marine Serv. LLC v. Schumacher*, No. 17-9868; 2018 U.S. Dist. LEXIS 85525, at *2 (E.D. La. May 21, 2018) (Africk, J.) (quoting *S&W Enters., LLC v. South Trust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003); *Boyd v. Boeing Co.*, No. 15-25, 2016 WL 76087 at *3, no. 22 (E.D. LA February 26, 2016) (Africk, J.), (holding that if the moving party has failed to show diligence, "the inquiry should end"). Plaintiff was not diligent in conducting discovery before she last asked the Court on August 4 for an extension, nor has she been diligent in the weeks since. Plaintiff's delays in confirming desired deponents and date scheduling exacerbated the problem. The Court should not reward such behavior by permitting it to continue. Plaintiff has had more than adequate time to prepare her case, and this cutoff extension inquiry should end.

Tulane therefore respectfully requests that Plaintiff's Motion to Continue Cutoff Dates be denied.

Respectfully Submitted:

By: */s/ Julie D. Livaudais*
Julie D. Livaudais, T.A. (La. Bar No. 1183)
Rosalie M. Haug (La. Bar No. 37720)
Jesse G. Frank (La. Bar No. 38220)
    -of-
CHAFFE McCALL, L.L.P.
1100 Poydras Street
2300 Energy Centre
New Orleans, LA 70163-2300
Telephone: (504) 585-7000
Facsimile: (504) 544-6054
Email:   livaudais@chaffe.com
         haug@chaffe.com
         frank@chaffe.com

-and-

3860061-1

By: /s/ Leslie W. Ehret
Leslie W. Ehret (La. Bar No. 18494)
Benjamin M. Castoriano (La. Bar No. 31093)
FRILOT, L.L.C.
1100 Poydras Street, Suite 3700
New Orleans, LA  70163-3700
Telephone:  (504) 599-8000
Facsimile:  (504) 599-8100
Email:  lehret@frilot.com
bcastoriano@frilot.com

*Attorneys for Defendant, The Administrators of the Tulane Educational Fund*